IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| **AMBER IBARRA** § | | **CIVIL ACTION NO.** |
| **PLAINTIFF** § | | |
| § | | |
| V. § | | 7:10-cv-00113 |
| § | | |
| **UNITED PARCEL SERVICE, INC.** § | | |
| § | | |
| **DEFENDANT** § | | |

PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**Plaintiff AMBER IBARRA ("Plaintiff")** files this Complaint and would respectfully show the Court as follows:

PARTIES

1. Plaintiff is an individual who resides in Ector County, Texas.

2. **Defendant UNITED PARCEL SERVICE, INC. ("Defendant" or "UPS")** is an Ohio Corporation. Defendant may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

JURISDICTION AND VENUE

3. This Court has federal question jurisdiction because the action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3).

4. Venue is proper in the U.S. District Court for the Western District of Texas, Midland-Odessa Division because the unlawful practices alleged below were committed therein.

### EXHAUSTION OF ADMINISTRATIVE PROCEDURES

5. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Plaintiff files this suit within (90) days of receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission.

### CONDITIONS PRECEDENT

6. All conditions precedent have been performed or have occurred.

### FACTS

7. Plaintiff began working for Defendant at its Fort Stockton facility in 1992 as a Christmas helper. Then Plaintiff was hired as an air driver at the Odessa Package Center on or about June 19, 1996. Over time, Plaintiff worked her way up to become a delivery driver. Plaintiff operated a Freightliner P-12 Van, which is the largest delivery truck with a registered gross weight of 80,000 pounds.

8. For approximately the past 5 to 6 years, Plaintiff has been the only full-time female driver at the Odessa facility.

9. Plaintiff was subjected to offensive comments by supervisor Bob Anglin and other managers. For example, Anglin repeatedly told Plaintiff to "suck [his] dick."

10. On once occasion in particular, Plaintiff was off duty shopping with her mother, and Anglin contacted her by pager. Plaintiff called the facility and asked to speak to Anglin. When Anglin answered the phone, Plaintiff asked him what he needed and he replied, "Yes, I need you to suck my dick." Horrified by this comment, Plaintiff told Anglin that he was on speaker phone and that her mother could hear him. He

replied, "Be here at 4:00 p.m." and hung up. He made other offensive comments to Plaintiff such as calling her a "fucking imbecile" and a "fucking idiot."

11. Some of the female employees initiated a complaint against Anglin, and Plaintiff gave a written statement on or about September 4, 2008. As a result, Mr. Anglin was fired. However, other male managers continued to treat Plaintiff differently from male employees.

12. Center Managers Richard Alfaro, Ron Morris, and Brian Woods, and Supervisors Bob Anglin, Ronnie Ramirez, and Rusty Wilkes do not want women in the workplace because they perceive that men are stronger, quicker, and faster than women, and women are weaker, slower, and have menstrual periods. Comments about female employees' menstrual periods were common.

13. Plaintiff was assigned extra work and given a smaller time frame to meet production compared to male employees. Specifically, Plaintiff's daily load was 450-500 packages with 170 stops compared to 400 packages with 125-130 stops for male drivers covering her route.

14. On one occasion, while Plaintiff was pregnant, manager Ron Morris made Plaintiff deliver six (6) 100 lb. packages that he had "saved" for her to a residence between 9:30 p.m. to 10:00 p.m. at night.

15. On June 23, 2009, at approximately 1:52 p.m. Plaintiff was exiting a parking lot headed northbound on 4100 Golder Street. Plaintiff's seatbelt tightened around her chest and hip areas; after Plaintiff completed the turn she removed her right hand from the wheel to adjust her seatbelt. At this time, Plaintiff's front passenger tire

went on top of the curb and struck an electrical pole.  Plaintiff immediately called her supervisor Ronnie Ramirez to report the accident.

16.     Ronnie Ramirez and UPS mechanic Mark Sredanovich arrived at the accident scene.  Ramirez questioned Plaintiff whether she had been on her cell phone and she told him that she had not.  Shortly after, UPS pre-load supervisor Rusty Wilkes arrived with a camera to take pictures.  Plaintiff's truck was towed back to the Odessa Package Center. No one ever attempted to check if Plaintiff's truck was drivable.

17.     Plaintiff rode back with Rusty Wilkes and gave an accident report to Liberty Mutual Insurance Company.  Also, she took a safety assessment test.  After she was finished, Wilkes told Plaintiff to report back to work on June 24 at 7:45 a.m. to finish safety reviews and go back to work when she was finished with the safety reviews.

18.     On June 24, 2009, Plaintiff reported to work at 7:30 a.m.  After Plaintiff completed her safety review, Teamsters job steward Miguel Barrientos informed Plaintiff that there would be a meeting between Business Manager Bryan Woods, Barrientos, and Plaintiff.

19.     During the meeting, Woods told Plaintiff, "You accident it out of my hands and Division Manager Gary Rhea has requested that you be put out of service pending investigation or until further notice."  Barrientos informed Plaintiff that she had a right to file a grievance with the Southern Region Area Parcel Committee.  She was immediately sent home and suspended.

20.     At approximately 7:45 a.m. on or about July 6, 2009, Barrientos called Plaintiff to come into the office for a meeting between Barrientos, Woods, and Plaintiff.  Barrientos informed Plaintiff that Woods had asked him to represent her at the meeting.

At the meeting, Woods again stated that the accident was out of his hands and Rhea had told him to give Plaintiff her Official Notice of Discharge because of her serious accident. Immediately, Barrientos advised Plaintiff to file another grievance with the Southern Region Area Parcel Committee.

21. Plaintiff filed a second grievance with the Southern Region Parcel Committee stating that her termination was unjust. She requested to be reinstated with full pay and benefits. Plaintiff was informed that she would be notified about a local hearing.

22. A local hearing took place on or about August 5, 2009, with Gary Rhea and UPS Labor Manager Cheryl McKinnin present via telephone. Business Representative of Teamsters Local 577 Brian Ahearn, Rusty Wilkes and Plaintiff were present in person. When the meeting had concluded, McKinnin and Rhea told Plaintiff that they were going to uphold her discharge.

23. On August 6, 2009, Plaintiff sent Ahearn a lengthy email stating that she did not feel that the Union had adequately represented her in the hearing the previous day. Ahearn had made little to no effort to get the facts from Plaintiff for the hearing. Plaintiff stated that male drivers with more serious accidents had not been terminated. Plaintiff stated in part, "I am the only full time female employee driver in the Odessa 7976 district. I feel my termination has been biased and unjust because I am a female."

24. The next level appeal was to a panel hearing in Florida. On August 18, 2009, Plaintiff arrived in Florida to attend the hearing with Ahearn. Again, the Union failed to adequately represent Plaintiff. No mention was made of sex discrimination.

25. On August 21, 2009, Ahearn called Plaintiff to inform her that her termination had been upheld.

26. A number of male drivers for the Odessa Package Center were involved in "serious accidents" which were similar or worse than Plaintiff's accident. The male drivers were not terminated, or were terminated and rehired on suspension. These drivers include but are not limited to the following:

    a. Edmundo Garcia was involved in an accident involving five vehicles and one fatality on or about January 27, 2009.

    b. Edmundo Garcia was involved in an accident involving five vehicles and one fatality on or about January 14, 2010.

    c. Ricky Mendoza was involved in an accident with a feeder truck on or about April 21, 2010. His truck was damaged, requiring a rental truck.

    d. Raul Franco hit a parked vehicle on or about July 21, 2009.

    e. Manuel Baeza was hit while his vehicle was parked on June 24, 2009, because he failed to park in a position that would avoid traffic flow.

    f. Gayland Zuniga sideswiped another vehicle on May 29, 2009.

    g. Vance Gilliam fell asleep, ran over and wrecked into a parked car on a highway.

### COUNT ONE – SEX DISCRIMINATION

27. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is female. *See* 42 U.S.C. §2000e(f).

28. Defendant is an employer within the meaning of Title VII. *See* 42 U.S.C. §2000e(b).

29. Defendant intentionally discriminated against Plaintiff by terminating her employment because of her sex.

30. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages. Defendant's conduct was willful and justifies an award of punitive damages.

31. To the extent that Defendant contends that Plaintiff was fired for a legitimate non-discriminatory reason, said reason is a mere pretext for discrimination. Alternatively, the reason(s) given for Plaintiff's termination, while true, are only some of the reasons, and Plaintiff's sex was a motivating factor in the decision to terminate her employment. In other words, Defendant had mixed motives for Plaintiff's termination.

## DAMAGES

32. Plaintiff was discharged from employment. Although she has diligently sought other employment, she has been unable to find a job with comparable pay and benefits. In addition, Plaintiff has incurred expenses in seeking other employment. Plaintiff suffered damage to her pension or retirement benefits. Plaintiff seeks compensation for all back pay and lost wages and benefits. Reinstatement to Plaintiff's previous position is impractical and unworkable. Therefore Plaintiff seeks an award of front pay and future lost wages and benefits. Plaintiff suffered mental anguish and emotional distress.

## ATTORNEY'S FEES

33. Plaintiff was forced to engage counsel to protect her rights. Plaintiff is entitled to an award of attorney's fees and costs under Title VII, 42 U.S.C. §2000e-5(k).

## INTEREST

34. Plaintiff is entitled to prejudgment and post judgment interest at the highest lawful rate.

## JURY DEMAND

35. Plaintiff demands a jury trial.

## PRAYER

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for the following:

a. Compensatory and punitive damages;

b. Back pay and front pay;

c. Attorney's fees and costs;

d. Prejudgment and post-judgment interest;

e. Such other and further relief, at law or in equity, to which Plaintiff may show herself justly and lawfully entitled.

Respectfully submitted,

/s/ Holly B. Williams

By:_____

Holly B. Williams
Texas Bar No. 00788674

**WILLIAMS LAW FIRM, P. C.**
1209 W. Texas Avenue
Midland, TX 79701
432-682-7800; 432-682-1112 (fax)
holly@williamslawpc.com

**BRIAN CARNEY**
Texas Bar No. 03832275
1202 W. Texas Avenue
Midland, Texas 79701
432-686-8300; 432-686-1949 (fax)
tbcatty@apex2000.net

**ATTORNEYS FOR PLAINTIFF
AMBER IBARRA**